## No. 16,218.

CHANEY *v.* INDUSTRIAL COMMISSION ET AL.
(207 P. [2d] 816)

Decided May 23, 1949.  Rehearing denied June 13, 1949.

Mr. ROBERT L. McDOUGAL, for plaintiff in error.

Mr. JOHN W. METZGER, Attorney General, Mr. JOSEPH E. NEWMAN, Deputy, Mr. DONALD C. McKINLAY, Assistant, for defendant in error Industrial Commission.

Mr. MANSUR TINSLEY, for defendant in error Misner.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error, as noninsured employer, seeks review and reversal of judgment of the district court affirming an award of the Industrial Commission to Elden B. Misner, one of the defendants in error, on the general grounds that the findings of fact by the Industrial Commission do not support the award of the referee; that the referee's order of September 3, 1948, is not correct as to the facts and is contrary to law; that the accident did not arise out of and in the course of the employment; and that the respondent was not an employer within the terms of the Workmen's Compensation Act.

Plaintiff in error operated a poultry business in connection with his home at 4325 Wadsworth avenue, Wheatridge, Colorado; he also operated a drive-in place on West Colfax avenue, Denver, where cooked chickens were sold to the public to be taken away or consumed in the customers' cars. The poultry business at the

employer's home was operated in the wintertime for the raising and feeding of chickens. From this place, he sold dressed chickens, both at wholesale and retail and conducted a delivery route. In the summertime, the drive-in place on West Colfax avenue was opened and operated, and used as an outlet for some of the chickens raised at the feeding place on Wadsworth avenue. At the time of claimant's accident, on February 6, 1948, the drive-in place was closed and the claimant was employed to help feed and kill the chickens at the feeding place on Wadsworth. The accident, resulting in an injury to his hand, occurred on the second day of his employment while he was attempting to open the door of a tool shed on the premises. The evidence is clear and undisputed that plaintiff had only three employees on the date of the accident. There is evidence of varying number of employees during such times as both places were in operation.

The two places of operation are so closely related in purpose and object, and especially where at times the employees were interchangeable, and when it is shown that the employer at times engaged more than the statutory limit, then that he became subject to the provisions of the Workmen's Compensation Act. There is no evidence that he ever attempted to withdraw from the act, and the findings of the commission on this question of fact and the judgment of the district court affirming same, according to our firmly established rule, will not be disturbed.

The main questions for our consideration, as disclosed by an examination of the entire record are: Was the referee's order correct as to the facts, and do the facts support the findings and award on the question of whether or not the accident or injury arose out of and in the course of the employment?

According to the claimant's own testimony, he was helping feed, kill and pack chickens. While he was so employed in a room used for that work, he testified, in

response to his counsel's questions, as follows: "Q. Well, tell us what you were doing and what happened to you on February 6th? A. Well, we were packing chickens. That is we had them killed and cut them up and were packing them to be shipped to the locker. I was in there helping pack the chickens and a boy came in and said his mother wanted something out of the tool room. So I went around there with him and the door was stuck and there was a jagged piece of glass around the door. Q. You say a boy came in. Who was the boy? A. Mr. Chaney's boy. Q. Said his mother wanted something out of what? A. A tool shed, tool room. Q. So you went over there with him and attempted to get this door opened, is that the idea? A. Yes. Q. What happened? A. Well, there was ice down on the edges of the door didn't come opened and I tried to open it, and it came off the hinges. I fell in on top of the door and pushed my hand on the door and cut my fingers on the glass."

In the referee's findings and order, we find the following: "Claimant was employed by respondent employer on or about February 5, 1948 for general duties in the business of raising said chickens. The following day, while engaged in his duties, respondent employer's young son informed claimant that his mother (respondent employer's wife) *wanted claimant to procure something* from a room used for the storage of tools. * * *

On redirect examination claimant's attorney propounded the following improperly colored question: Q. You said that Mr. Chaney's son came around to where you were working and said that his mother had told him to get something out of the shed, for him to get someone to open it up? A. Yes."

It is plain to be seen that the referee misapprehended the testimony of claimant, and it is equally as plain that claimant's counsel framed the last above-quoted question to meet the requirements, and no construction of the

claimant's own testimony will support either the referee's findings or basis for the counsel's question.

Counsel for claimant and the commission contend that claimant was obeying an order or request, since Mrs. Chaney, wife of the employer and the boy's mother, was in the habit of giving instructions to employees. She was in the home of the employer, away from the activities of the business, and was expecting to be confined, and was confined, within about a week following the date of the injury. The statement of her giving directions to the employees was denied by the employer who stated that she, as his wife, in the past, but not within the last year, frequently was around the place of business giving some assistance with the work. There is no testimony from claimant to the effect that the boy, nine years old, told him that his mother wanted someone to open the door. It is clear that the boy said he wanted a table out of the tool room and claimant volunteered to leave his employment, go outside the building to another building, the tool shed, to assist the boy in opening the door to get the table. Claimant testified that he thought he had better do it as long as he was working for Mr. Chaney. The table was not to be used in any manner connected with the business, but was to be for the boy's use and enjoyment in his room in the home.

It convincingly appears from the above, that the employee was not expressly ordered to do the thing that resulted in his injury by someone authorized to direct him as to his work. Leaving his work at the request of a nine-year old boy to do something separate and apart from anything connected with his employment was not a risk of the employment, and he became a volunteer. There was no causal connection between the employment and the injury here sustained, and, as we said in *Rocky Mountain Fuel Co. v. Kruzic,* 94 Colo. 398, 30 P. (2d) 868, in determining whether the injury arose out of and in the course of employment: "* * * we must

first find that the accident originated in a risk peculiar to the employment, and that there is a causal connection between the employment and the accident .or injury. 'An accident ˙arises out of an employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury.' *McKnight v. Houck,* 87 Colo. 234, 286 Pac. 279, * * *." As to whether the injury occurred within the scope of employment, "is to be determined with a view to all of the surrounding circumstances." *New Jersey Co. v. Patterson,* 86 Colo. 580, 284 Pac. 334. The claimant, as a workman, was not here exposed to the injury which he volunteered to bring on himself because the resulting danger connected with the opening of a door to an outside building separate and apart from the place of business at the request of a child and from no one in authority, was not inherent in, and has no necessary or essential connection with, the particular employment. "If the injury occurred by reason of some cause having no relation to the employment, it cannot be said to 'arise out of the employment.' " *Lexington Ry. System v. True,* 276 Ky. 446, 124 S.W. (2d) 467.

In the light of the herein quoted testimony and our application of the law as related thereto, we must determine that the referee's findings and order is not correct as to the facts and, therefore, contrary to law and a valid order of the commission cannot be supported thereby in that the accident and injury to claimant, as we determine, did not arise out of, or in the course of his employment.

The judgment is reversed and the cause remanded to the district court with instructions to return the case to the Industrial Commission with directions that it vacate its former award to claimant and enter an order denying his claim.

Mr. Chief Justice Hilliard and Mr. Justice Alter concur.