PANERA BREAD, LLC, and Sentry Insurance Company,
Petitioners,

v.

INDUSTRIAL CLAIM APPEALS OF-FICE OF the STATE OF COLORA-DO and Julio Medina, Respondents.

No. 05CA1465.

Colorado Court of Appeals,
Div. I.

July 13, 2006.

White and Steele, P.C., John M. Lebsack, Denver, Colorado, for Petitioners.

No Appearance for Respondent Industrial Claim Appeals Office.

Law Office of O'Toole & Sbarbaro, P.C., John A. Sbarbaro, Denver, Colorado, for Respondent Julio Medina.

Opinion by Judge MÁRQUEZ.

Panera Bread and its insurer, Sentry Insurance Company (collectively employer), seek review of a final order of the Industrial Claim Appeals Office (Panel) determining that an injury which occurred at the jobsite during horseplay was compensable. We affirm.

The findings of the administrative law judge (ALJ) can be summarized as follows. Julio Medina (claimant) was employed in a bakery, working in and around a cooler, and his duties involved moving bread racks. Because the floor of the bakery would become greasy, wet, and slippery, employer supplied workers with special shoes to counteract those conditions. On the day before the injury, claimant complained to the manager that his shoes were slippery.

Claimant was injured when, with a smirk on his face and without carrying a bread rack, he lifted his right leg as if he were going to kick a coworker, who was ten feet from the cooler and far enough away that he could not have been struck, and his left leg slipped out from under him. Claimant fell and sustained a sprained wrist and a hernia.

The ALJ found that horseplay had not become an accepted part of the employment and that claimant and his coworker had not previously engaged in any horseplay.

The ALJ applied the four-part balancing test enunciated in *Lori's Family Dining, Inc. v. Industrial Claim Appeals Office,* 907 P.2d 715 (Colo.App.1995), which was advocated in 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 23.01, at 232 (2005)(Larson's). The four-part test considers:

(1) the extent and seriousness of the deviation; (2) the completeness of the deviation, i.e., whether it was commingled with the performance of a duty or involved an abandonment of duty; (3) the extent to which the practice of horseplay had become an accepted part of the employment; and (4) the extent to which the nature of the employment may be expected to include some horseplay.

*Lori's Family Dining, Inc., supra,* 907 P.2d at 718.

The ALJ concluded that claimant's injuries were compensable because his actions did not constitute an extensive or serious deviation from his employment duties and he remained in the designated area to perform them. The ALJ also determined that claimant's injuries arose out of and in the course of employment from a combination of the slippery floor, his shoes, and his actions in attempting to kick toward his coworker. The ALJ distinguished *Kater v. Industrial Commission,* 728 P.2d 746 (Colo.App.1986), because the employee there made a complete deviation from the employment by dancing during a work break.

On review, the Panel characterized the issue as one of fact to be considered under the substantial evidence standard. It ruled that the ALJ was not required to conclude under the first two parts of the *Lori's Family Dining* test that claimant engaged in a substantial deviation from his employment and that nothing in *Lori's Family Dining* suggested that claimant must prove every element of the four-part test. The Panel affirmed the ALJ's determination as supported by substantial evidence.

## I.

To obtain compensation for an injury, an injured employee must, at the time of injury, have been "performing service arising out of and in the course of the employee's employment." Section 8–41–301(1)(b), C.R.S. 2005. In workers' compensation law, the terms "in the course of" and "arising out of" are not synonymous. *Popovich v. Irlando*, 811 P.2d 379 (Colo.1991).

An injury or occupational disease "arises out of" employment when it has its origin in an employee's work-related functions and is sufficiently related thereto to be considered part of the employee's service to the employer in connection with the contract of employment. The "course of employment" requirement is satisfied when it is shown that the injury occurred within the time and place limits of the employment relation and during an activity that had some connection with the employee's job-related functions. *Popovich v. Irlando, supra.*

It is not essential to compensability that the activities of an employee emanate from an obligatory job function or result in some specific benefit to the employer, as long as they are sufficiently incidental to the work itself as to be properly considered as arising out of and in the course of employment. *City of Boulder v. Streeb*, 706 P.2d 786 (Colo. 1985).

To determine whether initiation of horseplay constituted a deviation from employment, we utilize the four-part test adopted by *Lori's Family Dining, Inc., supra.*

Professor Larson considers the issue of horseplay to be more concerned with the "course of employment" requirement than the "arising out of employment" issue, and has commented that there is "a general but mistaken tendency to assume that the latter is the principal issue." He explains:

> Whenever the basic controversy stems from the nature of a course of conduct deliberately undertaken *by* the claimant, there is primarily a question of course of employment.
> [However,] [w]henever the controversy stems from the nature of a source of the injury to the claimant, there is primarily a question of "arising out of the employment."

*Larson's, supra,* § 23.07[1], at 23–12 to –14 (emphasis in original). *Lori's Family Dining, Inc., supra,* is cited as a case demonstrating a minor deviation insufficient to remove the claimant from the course of employment. There, teasing escalated to a physical level when claimant's leg was caught and held as he kicked at a coworker.

Under this approach, horseplay is analyzed under general principles that govern whether a claimant has deviated from employment so substantially as to remove him or her from the course of employment. When, as here, a particular act of horseplay, as opposed to the employment environment in general, is at issue, the act is to be judged according to the same standards of extent and duration of deviation that are accepted in other fields, such as resting, seeking personal comfort, or indulging in incidental personal errands. *Larson's, supra,* § 23.07[1], at 23–14.

Therefore, we agree with the Panel that it does not matter whether the horseplay doctrine fits best under the "arising out of" causation category or the "course of employment" time and place category. Whichever theoretical framework is applied, the issue remains whether the claimant's conduct constituted such a deviation from the circumstances and conditions of the employment that the claimant stepped aside from his job and was performing the activity for his sole benefit.

Because the issues are factual in nature, they must be reviewed under the substantial evidence standard. Section 8–43–308, C.R.S.2005. The evidence must be considered in the light most favorable to the prevailing party, and we, like the Panel, must defer to the ALJ's resolution of conflicts in the evidence, credibility determinations, and plausible inferences drawn from the record. *See Wilson v. Indus. Claim Appeals Office,* 81 P.3d 1117 (Colo.App.2003).

## II.

Employer contends that *Lori's Family Dining* is distinguishable because the key factor supporting compensability in that case was that horseplay had become a pattern

which was accepted at the workplace. Employer reasons that because the ALJ found that horseplay was not an accepted part of the workplace here, the third and fourth factors of the test enunciated in *Lori's Family Dining* could not be satisfied and, as a matter of law, compensation should have been denied.

Employer also contends that the finding that claimant's injury arose from a combination of a slippery floor and an attempted kick does not separately support compensability because, regardless of the work conditions, it was claimant's deviation when he attempted to kick his coworker that precipitated the fall. Employer finally contends that the facts in this case are indistinguishable from those in *Kater*, in which compensability was denied for an injury that resulted from an isolated incident of horseplay, involved an act unrelated to any employment duty, and did not confer a benefit on employer. We are not persuaded.

We agree with the Panel that nothing in the *Lori's Family Dining* decision suggests that the claimant must prove the existence of every element of the four-part test to prove a compensable claim or that any particular element is decisive. Instead, the third and fourth parts of the test may be viewed merely as specific methods of proving that a claimant's actions became part of the employment.

Larson's does not suggest that all four parts of the test must be proved. Rather, it introduces the four parts only with the words, "whether initiation of horseplay is a deviation from course of employment depends on." In *Prows v. Industrial Commission*, 610 P.2d 1362, 1367 (Utah 1980), the Utah Supreme Court applied the four-part test in Larson's, stating as follows:

> By adopting the approach suggested by Larson, this Court does not intend the adoption of a test which by mechanical application will in cases involving horseplay dictate a "correct result." Indeed, this approach is not susceptible of mechanical application but rather is intended as a method of analysis to assist the Industrial Commission in consideration of future cases coming before it involving horseplay.

Similarly, in *Woods v. Asplundh Tree Expert Co.*, 114 N.M. 162, 167, 836 P.2d 81, 86 (N.M.Ct.App.1992), the New Mexico Court of Appeals addressed the four-part test, stating, "After considering these factors, the factfinder must determine whether the accident occurred during a substantial deviation from the course of employment."

Thus, even if the horseplay was not common or condoned by the employer, the absence of the last two elements does not rule out the possibility that, under the first two elements, the claimant engaged in such minor horseplay that it did not fall outside the scope of the employment.

Here, the ALJ found that claimant's horseplay occurred within ten feet of his assigned workstation at the cooler and was of very brief duration. These findings support the ALJ's inference that there was not a complete abandonment of duty. Further, as noted by the Panel, claimant's injuries were caused at least in part by the conditions of the employment that required him to wear slippery shoes on a wet floor. Finally, we agree with the Panel that *Kater* is distinguishable because the claimant's actions there were more than of momentary duration and supported the inference that the claimant had completely abandoned her job to perform dance steps for personal reasons.

The order is affirmed.

VOGT and RUSSEL, JJ., concur.